# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00510-CV

**Frazier Rutherford Lewis and Carla Gibbons, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. 30,755, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this accelerated appeal, appellant Frazier Rutherford Lewis appeals the district court's order terminating his parental rights to his child M.T.G. following a jury trial.[1] *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2007). In one issue, Lewis challenges the legal and factual sufficiency of the evidence to support the jury finding that his parental rights should be terminated. Because we conclude that the evidence is legally and factually sufficient to support the jury's finding, we overrule his issue and affirm the trial court's order of termination.

---

[1] Although appellant Carla Gibbons filed a notice of appeal, she has not filed a brief or otherwise participated in this appeal. Therefore, we dismiss her appeal for want of prosecution and failure to comply with the rules of appellate procedure. *See* Tex. R. App. P. 42.3(b), (c).

**BACKGROUND**

The Department of Family and Protective Services first became involved with M.T.G. in July 2005, after allegations were made that her mother was addicted to drugs, using crack cocaine, and not caring for her children. M.T.G., who was five months old at the time, had three older half-siblings. M.T.G.'s mother voluntarily placed her children with her aunt and entered an inpatient substance abuse treatment program. After M.T.G.'s mother completed inpatient treatment, the Department returned the children to her under the supervision of relatives and with the Department's continued monitoring.

In February 2006, M.T.G.'s mother submitted to a random drug test, and the test results were positive for cocaine. The Department removed the children from their mother's care, placing M.T.G. with a foster family[2] and M.T.G.'s three half-siblings with relatives. The Department also initiated this suit on February 24, 2006, and the trial court granted temporary managing conservatorship of M.T.G. to the Department. The Department's original petition did not name Lewis, but another man, as M.T.G.'s "alleged father." The other man underwent paternity testing, and the test results confirmed that he was not M.T.G.'s father.

In January 2007, M.T.G.'s mother filed an affidavit with the trial court naming Lewis as the father, and the Department filed a third amended petition naming Lewis as M.T.G.'s "alleged father." The trial court ordered Lewis, who was incarcerated, to submit to genetic testing

---

[2] In May 2006, M.T.G. was moved from her initial foster home to reside with a second foster family, and she continued to reside with this family at the time of trial. M.T.G.'s foster parents intervened in this suit in May 2007, seeking to be appointed M.T.G.'s managing conservators, and they also filed an intervenors' brief on appeal.

to determine parentage and appointed an attorney to represent Lewis. In March 2007, Lewis underwent paternity testing, and the test results confirmed that he was M.T.G.'s father. In July 2007, the Department filed its fourth amended petition, seeking to terminate the parental rights of both parents. The Department sought to terminate Lewis's parental rights pursuant to section 161.001(1)(Q) of the family code, alleging that he:

> knowingly engaged in criminal conduct that has resulted in [Lewis's] conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.[3]

*See* Tex. Fam. Code Ann. § 161.001(1)(Q).

A jury trial on the termination of the parental rights of both parents and on the permanent managing conservatorship of M.T.G. was held from August 6 to August 9, 2007. An attorney/guardian ad litem represented M.T.G., who was two-and-a-half years old at the time of trial. Much of the evidence at trial concerned M.T.G.'s mother and the appointment of the permanent managing conservator of M.T.G. M.T.G.'s foster parents and the Department both sought to be

---

[3] The Department also alleged that Lewis's parental rights should be terminated because he had executed an affidavit of relinquishment of parental rights as provided by chapter 161 of the family code. *See* Tex. Fam. Code Ann. § 161.001(1)(K) (West Supp. 2007). At the trial, there was no evidence that would support this ground for termination, and it is not at issue in this appeal.

3

appointed M.T.G.'s permanent managing conservator.[4] The jury heard testimony from over twenty-five witnesses, including caseworkers and supervisors from the Department.

Lewis, his mother, Mary Lewis ("Ms. Lewis"), and the caseworker that initially contacted Lewis, Betsy Minnich, were among the witnesses to testify concerning the termination of Lewis's rights. Minnich testified that she initiated contact with Lewis on behalf of the Department, developed a "Family Service Plan" that was "very limited in scope and based on his incarceration," and that Lewis did not do anything to comply with the plan. She also testified to Lewis's criminal history of three felony convictions—aggravated robbery with a deadly weapon, delivery of a controlled substance less than one gram, and burglary of a building—and that, in her opinion, Lewis's parental rights should be terminated.

Lewis testified that he was unaware that he had fathered M.T.G. until the Department contacted him in January 2007; he had never met M.T.G.; at the time of trial, he was twenty-eight years old and serving a six-year sentence following conviction for aggravated robbery with a deadly weapon, his third felony conviction; he was eligible for parole, having had a parole hearing in June 2007, and he was awaiting a decision; he had not had disciplinary problems in prison and had taken and taught an anger management class; and the maximum date that he would be incarcerated

---

[4] M.T.G.'s foster parents participated and testified at the trial, seeking to be appointed M.T.G.'s permanent managing conservators, in conflict with the Department's position that it should be appointed. In June 2007, the Department sought to change M.T.G.'s placement from the foster parents to Lewis's mother after the Department approved a home study on her, but the foster parents opposed the change. A permanency hearing was held on June 25, 2007, on the issue, and the trial court found the placement with the foster parents appropriate and maintained it. At trial, the foster parents provided evidence that M.T.G. had been living with them for approximately fifteen months at the time of trial and that they had received a favorable home study to support their position that they should be appointed M.T.G.'s permanent managing conservators.

was June 2010. He testified that he had fathered eight children with six different women and had not provided financial support for any of his children for the past three years "because I'm incarcerated and I can't take care of them." He also testified that he did not have any kind of steady employment prior to being arrested, but that he had "changed" and, when he was released from prison, he "plan[ned] on getting a trade and probably—in engine repair or something. If not, welding. If I can't do that, I guess I've got to get the easiest job, do a truck driver, do what I've got to do to stay out of prison, because it's not life."

Ms. Lewis testified to her desire and ability to care for M.T.G., including her living conditions and income. She testified that, although she was unemployed and there was conflicting evidence that her certified nursing assistant license had expired, she was planning to go back to work. She also testified that she did not have health insurance; her daughter, who had a learning disability and had never lived on her own, and granddaughter, who was receiving treatment for ADHD with anxiety, asthma, and a heart murmur, lived with her; and her reported monthly income from governmental benefits was $836 and her expenses were $720, without any allowance for M.T.G.'s placement with her. She testified that, if the jury decided not to terminate her son's rights, she would be willing to take care of M.T.G. until her son was paroled and, if the jury decided to terminate his rights, she would seek to adopt M.T.G.

As to the termination of Lewis's parental rights, the jury was instructed as follows:

> For the parental rights of Frazier Rutherford Lewis to be terminated at least one, but not all, of the following ground(s) for termination must be proven by clear and convincing evidence as to the child. While the jury need only find one of the following grounds for termination, at least ten jurors must agree that the parent committed at least one of the same grounds for termination regarding the child, AND

5

at least ten of the same jurors must agree that termination of that parent's rights is in the child's best interest.

* * *

b)    The parent knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

AND

By clear and convincing evidence that:

termination of the parental rights would be in the best interest of the child.

The jury found that both parents' parental rights should be terminated and that M.T.G.'s foster parents should be appointed as managing conservators of M.T.G. Based on the jury's findings, the trial court ordered the parental rights of both parents terminated and appointed M.T.G.'s foster parents as managing conservators of M.T.G. This appeal followed.

## ANALYSIS

To terminate Lewis's parental rights, the Department had the burden to prove the elements of section 161.001(1)(Q) of the family code and that termination was in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(1)(Q), (2). The elements of subsection (1)(Q) are:

(1)  that the parent has:

(Q)  knowingly engaged in criminal conduct that has resulted in the parent's:

(i)      conviction of an offense; and

6

(ii)    confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. . . .

*Id*. § 161.001(1)(Q).

In his sole issue, Lewis challenges the evidence supporting the elements in subsection (1)(Q)(ii). He contends that the evidence is legally and factually insufficient to support terminating his parental rights because "[t]here is no evidence that [his] conviction will result in his confinement for not less than two years from the date the paternity was filed." He asserts that he introduced evidence of good behavior and a recent probation hearing to demonstrate his release within two years and that "[t]he Department offered no rebuttal evidence to this testimony." Lewis also argues that "[t]o the extent possible, due to his incarceration, [he] demonstrated the ability to care for [M.T.G.]."[5]

***Standard of Review***

The standard of proof to terminate parental rights is the clear and convincing standard. Tex. Fam. Code Ann. § 161.206(a) (West Supp. 2007); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (due process requires clear and convincing standard of proof in parent termination cases). The clear and convincing standard is "'that measure or degree of proof which will produce in the

---

[5] Lewis asserts that due process requires that the limitations period affecting confinement and inability to care for M.T.G. under section 161.001(1)(Q) of the family code begin on March 6, 2007, the date that his paternity was confirmed, not the date the original petition was filed. *See* Tex. Fam. Code Ann. § 161.001(1)(Q) (West Supp. 2007). On appeal, the Department and M.T.G.'s foster parents do not contend that the two-year time period in subsection (1)(Q)(ii) began to run on the date the original petition was filed, but that the period began to run on July 5, 2007, the date the Department filed its fourth amended petition. Because the Department and the foster parents assert a later date and our conclusion is the same, we assume the later date for purposes of our analysis and need not address Lewis's due process concerns.

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)).

In reviewing the legal sufficiency of the evidence to support a termination finding, "a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review," a reviewing court "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. A court should "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. If a court determines that "no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id*.

In reviewing the factual sufficiency of the evidence to support a termination finding, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. (citing *In re C.H.*, 89 S.W.3d at 25). The court "should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

In reviewing termination findings for factual sufficiency, a court "should not supplant the jury's judgment with its own." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### *Period of Confinement*

Lewis contends that the evidence is legally and factually insufficient to support termination because Lewis provided undisputed evidence of good behavior in prison and his eligibility for parole. The supreme court, facing a similar argument from an incarcerated parent with the possibility of parole, concluded that evidence of the availability of parole is relevant to determine whether the parent will be released within two years under subsection (1)(Q)(ii), but the possibility of parole during the two-year period does not preclude a jury's finding to terminate. *Id*. at 109. The supreme court, in upholding termination, explained:

> If the mere possibility of parole prevents a jury from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under subsection Q will occur only when the parent has no possibility of parole. By that rationale, the party seeking termination would have to show that there is zero chance of early release. This would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt.

*Id*. In addition to the evidence that the parent was "up for parole each year and that he was participating in a pre-release program available to inmates within two years of parole," the supreme court considered evidence that the parent had multiple convictions, just under thirteen years remaining on one of his sentences, and that the parole board had denied parole twice. *Id*.

The evidence was similar in this case. The evidence showed that Lewis has the possibility of parole during the applicable time period—July 5, 2007, to July 5, 2009—but that his

maximum incarceration period was until June 2010, he had multiple felony convictions, and his current conviction was for a crime that involved the use of a deadly weapon. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable juror could have formed a firm belief or conviction that Lewis would remain incarcerated at least until July 5, 2009. *See id.*; *In re J.F.C.*, 96 S.W.3d at 266.

Viewing all the evidence, Ms. Lewis testified that the outcome of the parole hearing that occurred in June 2007, was expected "any day now." Lewis also testified that he had no discipline problems in prison and that he took an anger management class and taught a class during his incarceration. Giving due deference to the jury's factfinding, we also conclude the evidence of his recent hearing and good behavior was not so significant that the jury could not have reasonably formed a firm belief or conviction that Lewis would remain imprisoned at least until July 5, 2009. *See In re H.R.M.*, 209 S.W.3d at 109. "[T]he jury was free to disregard" Lewis's and his mother's testimony, "which was barely more than conjecture." *See id.* ("Parole decisions are inherently speculative.").

We conclude that the evidence was both legally and factually sufficient to support that Lewis would remain imprisoned at least until July 5, 2009. *See* Tex. Fam. Code Ann. § 161.001(1)(Q)(ii).

**Inability to Care**

To support termination pursuant to section 161.001(1)(Q), the Department also had to show Lewis was unable to care for M.T.G. for not less than two years from the date of filing of the petition. *See id.*; *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.)

(inability to care is additional requirement and is not met by showing incarceration alone). Among the factors that may be considered when deciding if there is an inability to care are "the availability of financial and emotional support from the incarcerated parent." *In re B.M.R.*, 84 S.W.3d at 818. Because the parent is incarcerated and unable to care directly for the child, the "care" contemplated by subsection (1)(Q) "encompass[es] arranging for care to be provided by another." *In re Caballero*, 53 S.W.3d 391, 395-96 (Tex. App.—Amarillo 2001, pet. denied).

Viewing the evidence in the light most favorable to the verdict, Lewis testified that he had a total of eight children with six different women, he has not provided any financial support for any of his children during his incarceration, and he does not have any trade or technical skills. As to evidence that Lewis arranged for care to be provided by Ms. Lewis, the evidence showed that she was unemployed and had little money apart from any amount resulting from M.T.G.'s placement with her; and that her daughter, who had a learning disability and had never lived on her own, and her granddaughter, who had health issues, lived with her. We conclude that the evidence was such that a reasonable fact finder could have formed a firm belief or conviction that Lewis, both directly or through his mother, was unable to care for M.T.G. during the applicable two-year time period. *See In re J.F.C.*, 96 S.W.3d at 266.

Viewing all of the evidence, the Department completed a home study on Ms. Lewis, which concluded that "Mary Lewis is capable of emotionally, physically, socially, and financially taking care of this child." Ms. Lewis testified that she was willing to care for M.T.G. and, although she was currently unemployed, she could "go to work tomorrow," she owned her car and home, and "money was not an issue." Relatives of Ms. Lewis also testified that they would help Ms. Lewis

11

financially. The jury is the "'sole arbiter when assessing the credibility and demeanor of witnesses.'" *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re J.L.*, 163 S.W.3d 79, 86-87 (Tex. 2005)). Here, the jury reasonably could have disbelieved the conclusions in the home study and the testimony of Ms. Lewis and her relatives in light of the undisputed evidence of Ms. Lewis's unemployment, limited resources, and other family obligations, and Lewis's failure to provide financial support for his eight children during his incarceration. We conclude the evidence supporting Lewis's ability to care for M.T.G., directly or through his mother, was not so significant that a reasonable juror could not have formed a firm belief or conviction that Lewis was unable to care for M.T.G. *See In re J.F.C.*, 96 S.W.3d at 266.

We conclude that the evidence was both legally and factually sufficient to support that Lewis was unable to care for M.T.G. during the applicable time period. *See* Tex. Fam. Code Ann. § 161.001(1)(Q)(ii).

### *Best interest of the child*

To support the termination of Lewis's parental rights, the Department also had to show that termination was in the best interest of M.T.G. *See id.* § 161.001(2). Although it is not clear Lewis has presented this issue for our review, *see* Tex. R. App. P. 38.1(e), (h), in the interest of justice, we review the factual and legal sufficiency of the evidence to support that termination of Lewis's parental rights was in the best interest of M.T.G. *See* Tex. Fam. Code Ann. § 161.001(2); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (listing factors courts consider in determining best interest of child, including stability of home, parental abilities, and the emotional and physical needs of the child).

12

The evidence was undisputed that Lewis had never met M.T.G. and that he was unable to provide for her emotional and physical needs. Minnich testified that the basis of her opinion that Lewis's parental rights should be terminated was his "extensive criminal history" and his inability to provide a permanent home for M.T.G. Minnich also testified to the importance of a stable family and a safe and appropriate home for M.T.G.:

> Establishing a bond with a family is very important. She is two. She has 16 more years left of her childhood before she is an adult. She needs a permanent home, not some place that's just in the system or just being bounced around. She needs a home that she can come to and that she knows is her[s] forever.

This evidence was not disputed. The attorney/guardian ad litem also recommended that the jury terminate Lewis's parental rights:

> [T]he first recommendation that I have is that you terminate the rights of Frazier Lewis. In 40 years of practice, I can't remember a father who's done worse than him.

Viewing all the evidence, there was conflicting evidence concerning M.T.G.'s best interest. Lewis testified that he wanted custody of his daughter, and Ms. Lewis testified that her son should have custody and that she would take care of M.T.G. until Lewis was released from prison. But, when questioned by his attorney about the best interest of M.T.G., Lewis testified that he would be willing to terminate his rights as long as his mother was involved with M.T.G.:

> Q. It will be the jury's decision as to what to do with the parental rights of the child. And whatever—they can terminate or not terminate; they can terminate the mother's, they can terminate yours or not. But we are hoping that, in some

13

way or fashion, that your mother, Mary Lewis, is involved with [M.T.G.]. Do you think that's good for [M.T.G.]?

A.  Yes.  If it takes for my rights to get terminated for me to know [M.T.G.] that's—I've just got to do that.  It's hard to terminate your rights to your kids. How can you know you've got a kid out there but can't be a part of his life? That's cruel punishment.  That's cruel; that's real cruel.  How would you feel?

Q.  Do you—you think it would be in the best interest that your mother have some sort of relationship with M.T.G.; is that right?

A.  Yes.  I feel her biological mother should have a relationship, too.

We conclude that the evidence was legally and factually sufficient to support that termination of Lewis's parental rights was in the best interest of M.T.G.  *See In re J.F.C.*, 96 S.W.3d at 266.

## CONCLUSION

Because we conclude that the evidence is legally and factually sufficient to support the jury's finding to terminate Lewis's parental rights, we overrule his issue and affirm the trial court's order of termination.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   August 20, 2008

14